This is the next case, Peabody Coal v. The Workers' Compensation Commission, 45090082. Counsel, please. Good morning. May it please the court, Mr. Osorio. Kevin Haislip for the respondent. I would like to center on two of the issues of the three or four that were in the brief. The first one is the notice issue. Our contention is that petitioner did not give notice to the respondent. We cite and we rely on the White decision from 2008. We have argued not only that there was no notice, but even when they gave notice, there was prejudice to the respondent. The White decision clearly establishes that if no notice is given, you don't have to go to the next prong of the test as to whether there was undue prejudice. Didn't White involve a competitive trauma claim? It did. And didn't that, unlike the statute here, the workers' compensation act provides as a general, an employee must provide notice of an accident as soon as practicable, which is close to what we have here, but not later than 45 days after the accident. So wasn't there a specific time limit on that? How does White control this? Well, as soon as practicable is the language also in the OD Act for this. I don't think White is, I didn't see anything in the White decision that says it controls only trauma cases. The question is, when was notice given and was it as soon as practicable? Petitioner has testified at length that he allegedly was aware of his breathing problems for several years before he stopped working as a coal miner and even after he stopped working as a coal miner. As we pointed out in the brief, our contention is that if you are aware of the breathing problems, why would you not give notice? It's not like state black loan claims are new thought processes for anyone. Everyone that works in a coal mine knows about coworkers' pneumoconiosis. I see the point. There's two issues. The statute, I think you can fairly argue, doesn't really have a definitive time or prescribed form. That's correct. You can argue that though, but the case law then indicates the claim wouldn't fail, as I understand, unless the employer is prejudiced by that. So what was the prejudice in this case? Our prejudice, as we pointed out in the brief and we've argued for some time, is the petitioner gets to dictate when they file the application and when we're first notified of claims. In this case, the application for adjustment of claim was filed in December of 2002, more than two years after he last worked as a coal miner. So we have a two-year detriment that we can't check with coworkers or investigate or have him examined or do anything because we don't even know about a potential claim for two years. So our prejudice is that we can't get an examination with two years, which then goes to the issue of date of disablement, where they have to prove that he was disabled within two years of date of last exposure. So it's sort of a two-pronged problem that we have when we're not given notice, but the petitioner decides when the application is filed and sometimes it's filed two years, sometimes two and a half, sometimes before the three-year statute of limitations would run for ordinary disease processes. So we believe White is controlling on this. The only difference is that White is a trauma case for repetitive trauma, but the language is essentially the same as soon as practical bullies is what it is. If you believe his testimony, he knew he was having significant breathing problems for many years and the first time we get notice of this is two years later. What about this argument? Claimants are probably going to argue he filed this claim after he first obtained medical evidence. As I understand it, he has a chest x-ray on October 23, 2002. Dr. Alexander interpreted the film as positive for CWP on December 2nd. About three weeks later, he files the claim. So can't he argue that he came forward when he first really learned there was medical evidence to support this? Well, number one, we don't know that. That medical is not provided to us. We don't know that when he files the application. When the application is filed, and in this case we didn't get any medical records until 2006, and we know that because that's when we scheduled the examination with Dr. Selby. We did not get any medical records from Dr. Alexander or Dr. Gerber for years. And in this, so petitioner is just dictating, he gets to decide when he files things and when he gives us the information. The case can ride on the doctor for three years before it comes up on the arbitrator's hit list. But in this case, I'm not aware of any law or case that says that you have to, that filing it within the date that you get a report from your examining doctor applies to notice. That might apply to statute of limitations if you get it timely filed or not, or date of disablement, but notice is a whole different animal as we've explained in the brief. Why does he get to wait two years before filing the application? Because he decides he's going to wait one or two years before he gets a chest x-ray read by his doctor in another state. So he's dictating when he's giving us notice of the case. The, and again, one of my last points in the notice was we're not aware of any case that stands for that proposition that if you're given notice within a few weeks or a month or two after you get an examining x-ray read that that is proper notice. Well, he claims he didn't know he had CWD until he got the chest x-ray. Dr. Alexander found it. That's not his, that's correct, except his application is for breathing problems, not co-worker's pneumoconiosis. He's filing an application for significant breathing problems that have developed for 20-something years. If you believe his testimony, he's had these problems. How does one get co-worker's pneumoconiosis? From being exposed a sufficient time. For a long, for many years. That's correct. And is co-worker's pneumoconiosis a breathing problem? It's a pulmonary problem, isn't it? Yes. So, what's, where's the contradiction? That you're talking about? He files because he's, he wants breathing problems. Alexander tells him he's got co-worker's pneumoconiosis. Didn't get this from smoking cigarettes, got this from working the coal mine. Gives you notice within how many months? He gives us, he files the application within two months of the date the x-rays take. In one month or a time that Alexander told him? We don't know what Alexander, we don't know if Alexander ever told the claimant. We know that Dr. Alexander sent a report to the attorney, and then he files the application. But, the point is, he's making a claim for breathing problems and disability because of breathing problems. You can have co-worker's pneumoconiosis and still work, and still work without any problems. Can't go in the mine though, can you? Can't go back to the mine. If you truly have it, every doctor agrees, you should not go back to the mine. So, you're disabled from your ordinary occupation. Now, you got to talk about what else you can do. That's correct. You're going to have a waste of money. But, we're talking about notices. That's correct. You can't give notice of something you don't know you have, can you? You can give notice of breathing problems, and shortness of breath, and dyspnea, and I can't walk long periods of time, or I can't climb stairs. All these things that they testify to at arbitration, they have a litany. It's the same list we hear time and time again. Certainly, if you don't believe that testimony, then this case has to fail, because then he doesn't prove anything at all as far as his breathing problems. But, isn't it like the application of the discovery rule? He's got to give notice within a reasonable period of time, after he, one, knows that he has the problem, and, number two, knows that it's somehow related to his employment. He's not going to give notice of something that's not related to his employment. I would submit that any coal miner that truly has breathing problems, to the extent that he has testified, a reasonable person, a reasonable coal miner would know that that breathing problem is in some way, if not completely related to working as a coal miner, especially if that individual doesn't smoke. There's no other plausible explanation. Again, we're not reinventing the wheel here. This is the scenario that's given in every case. My next point that I want to really address is the wage differential award. The commission reversed the arbitration on that point. As we pointed out in the brief, we rely on the case of Dawson v. Industrial Commission that this court decided in April 2008. I looked at the facts of Dawson and compared them with the facts in this case, and they are strikingly similar. There's a few minor irrelevant differences, but other than that, in Dawson, the date of last closure was 97. X-ray was taken in 2000, three years later. They filed the application a month later, seized Dr. Sanjabi a year later, and then the attorney sends him to Dr. Selby for the evaluation. We stand by what we have in our decision in our brief on the Dawson case. In our opinion, it's controlling on the issues in this case. There just isn't any difference. This court found in Dawson that the first thing the claimant must prove must show that but for his injury, he would have continued his mining career. The reason he stopped working in Dawson is the same reason he stopped working in this case. What he did in Dawson, he even went to training for a heating and cooling system, almost identical to what happened here. The facts in Dawson are just strikingly similar. This court held that claimant, in that case Dawson, claimant did not qualify for a waste differential award because he failed to establish that but for his injuries, he would have been in full performance of his duties as a coal miner. Same thing here. The petitioner in this case testified, but for the closure of the coal mine, I would have continued working. I went on the panel, stayed on the panel for several years. But for that, I would have returned to work as a coal miner. Didn't Garber testify that he generally instructs individuals with CWP not to return to coal mining? Generally, yes he does. I specifically asked him, in this case, did you do that? He said he did not. He didn't remember doing it, right? That's correct. He did not have it. If you look at his report, there's no comment in there that he put any restrictions on him whatsoever. It's the same thing in Dawson's case. Dr. Santabi did not place any restrictions on the petitioner but said, you know, he's got co-working pneumoconiosis, he should not return to work as a coal miner. What did Selby say? Didn't Selby say that he shouldn't return? If he has co-working pneumoconiosis, he should not return to work as a coal miner. We all agree on that. But in this case, that's not why he stopped working. If he stopped working because of breathing problems, this man has never had any treatment for breathing problems ever while working as a coal miner. But if you concede that if he has co-working pneumoconiosis, he cannot return to the coal mine, then in that particular case, does it make any difference that he didn't return because he retired as opposed to he didn't return because he had CWP? If it's determined that he has it and cannot return, what difference does it make what his real motive is? If he can establish I've got CWP and you concede that anybody with CWP cannot return to coal mining, then what difference does it make what his actual motivation for leaving was? Other than the question of what the start date is. Other than that's the law. I mean, that's the Dawson case. The arbitrator and everyone found he had CWP. Dr. Sanjabi testified he had CWP. This court decided that's not what we're looking for. He has to prove, number one, that but for his injuries he would have continued his work. He didn't do that in this case. He didn't do that in Dawson. This court then says, although Dr. Sanjabi opined that additional dust exposure would risk claimant's health, he did not place any physical restrictions on claimant. We don't have any physical restrictions by Dr. Gruber in this case either. And then the final holding is because we affirm the commission's finding that claimant did not prove a partial incapacity preventing him from returning to coal mining we need not discuss whether there's an impairment of earnings. Preventing him from returning to coal mining. He didn't prove anything prevented him from returning to coal mining. In our case you can see if he has CWP he cannot return to coal mining. I guess then the question is how is Dawson different? Maybe Dawson was providently decided. No one testified that the employee's respiratory problems precluded him from working as a coal miner. That was one of the key findings in Dawson. I'm sorry? There was no evidence apparently in the record in Dawson that the employee's respiratory problems precluded him from working as a coal miner. Is that the same here? Yes, what evidence here from any doctor says that he can't go back to work because of breathing problems. He can't work in a coal mine. Same thing with Dawson. Dawson evidently no one said it. Yes, Dr. Sanjabi flat out says if you have co-worker's pneumoconiosis you cannot go back to work as a coal miner. Dr. Selby said if you have co-worker's pneumoconiosis you cannot go back to work as a coal miner. Does it make any difference that in Dawson we affirm the Commission's denial of benefits? I see the difference there. I think you're probably looking at two different panels of the Commission. I think the facts are the facts and the facts aren't any different here than they are then. In that case you may have had one panel from the Commission finding it one way and denying it. One panel may be more liberal than another panel. We have three panels now. I don't know, there was no way to look up to see what panel decided the Dawson case. I do know it came from the fourth. So it probably was a different panel from the Commission. Here we have identical facts. In Dawson, Selby and Sanjabi both testified. If you have co-worker's pneumoconiosis you should not go back to work as a coal miner.  Let's go to that issue we were talking about. If you've got a diagnosis of CWP does that automatically mean that you cannot return to coal mining and therefore you cannot return to your regular occupation? If the testimony supports that the answer is yes. I could ask defective questions and not get that truth in the record and in that case the record wouldn't support it. But yes, if the right questions are in the record a guy has pneumoconiosis, as Mr. Hazlett said he can't go back to the coal mine and endanger himself. So then in that particular case, if that occurs why he quit coal mining and actually left coal mining is irrelevant to the issue, is it not? Yes, it is. Irrelevant to the question of whether he is entitled to a wage differential? It is irrelevant to it, yes, in my opinion. And another thing I would like to say I read these cases just like Mr. Hazlett does and I'm tempted to say the court said this, the court said in Dawson that you don't get a wage differential. That's not what the court said. The court said the commission's decision was not against the manifest way of the evidence. So I think that's one big difference in Dawson. Is there a way you can also distinguish Dawson from our factual situation? I mean obviously he's relying very extensively on Dawson. Can you distinguish it and the merits of it? Yes, there is one particular fact in this case that distinguishes this from Dawson and most other cases I've seen. This man was offered a job to go to coal mine again in Kentucky even after he was off the panel. He said no, I'm not going back. And I'm not going back because of the dust. Given that fact, it's very easy for it to decide the commission concluded that that was consistent with his earlier decision not to go back to coal mining because of the fear of the breathing coal dust. And another thing I want to say is the coal companies want to say the reason he quit mining is because he was laid off. Well, the fact of the layoff, that's the reason he didn't go back to work the next day. There was no job for him. But you've got the panel. You've got other coal mines. At some time in this guy's mind, he said I'm not going back anymore. I've got out for a week. No coal dust. It's great. That was bad for me. I had those breathing problems. I recognize that now. And I'm not going back anymore. So don't we have a situation here where he's on the panel, but then he closes the panel to only the Marissa mine? Absolutely. And in fact, I see that in the Dawson case too. And every fact, each fact of the case depends on all the facts of the case. And the commission in Dawson looked at all the facts in Dawson. And the commission in Hoffman looked at all the facts in Hoffman. And so Well, I'm saying it's not an unreasonable inference to say I just want to work at Marissa because I don't want to leave my horses and I'm not going down to Kentucky. Why does a guy sign up on a panel? What happens is, when there's a layoff a couple hundred guys in a room. They're getting all this information. Go over there. Sign up for the panel. Go over here. Sign up for whatever medical rights you have. Go over there. Call him a soarer. See if he's got a black lung plan. And the miners then have to decide. If I don't sign that panel and my wife comes down with an illness or the economy goes to hell and I've got to work and I care more about that than my life. I want to keep that option open. Also, if they don't sign that panel it can affect their pension rights. So they sign the panel for what? For mining those clothes. It's not going to reopen. And in this case for a job he didn't do. I think that it's not unreasonable to conclude the commission looked at the panel in this case and said when he signed that up what he was really saying was I don't want to coal mine anymore. My question is more basic. Does that make a difference? What difference does that make? I don't think it should. Look, a guy is a coal miner and he's got a cough of some kind. He decides on a given day I don't want to be a coal miner anymore I want to go sell farm equipment. So he leaves the mine. He goes and sells farm equipment. And then he goes and sees a doctor. And the doctor diagnoses him with CWP. It falls within the two year range. He now files a worker's compensation action. And he says I'm entitled to compensation. Why? I got CWP because I was a coal miner and the CWP prevents me from performing the occupation of a coal miner. Does it really make a difference why he left? I don't think so. I know I'm going to mess this up but to me I see the chronology going like this. The award is for the disease. The scarring in the lungs. That's why there's an award. The trigger for the award is the guy left the coal mine. Either because he was laid off, because he physically couldn't go back the next day, or because circumstances made it so he couldn't go back that day. And the appropriate question is not why did he leave but can he go back? And I think those three questions put in perspective what you're asking. The award is for the disease, the trigger is he's not mining anymore, and the question is can he go back? One of the things I wanted to ask you is this issue of the notice. Mr. Haslund opined that the company was prejudiced by the lack of timely notices. What is your response to that? Why wasn't the company prejudiced under these circumstances? Well, several things. First of all, Mr. Hoffman did all he could. Well, first of all, the decision of the arbitrator was that the notice was adequate and there was no prejudice and it was the commission's call to make. And Peabody couldn't convince it otherwise. Now, as you noted earlier, Mr. Hoffman gave notice by filing his claim within a month after he found out his x-ray was read as positive. And that's as soon as practical. And Peabody obviously didn't care much about time because they didn't schedule a Dr. Selde exam for three and a half years after the claim was filed. Not for two years after Dr. Gerber's exam. So, how were they prejudiced? Would he say he really, really, really doesn't have pneumoconiosis? He found him completely negative on everything. So I don't see how they possibly could have gotten any more evidence. But the most important thing is what I specifically looked at and decided that there was no prejudice. That was one of their specific findings. And it's their call to make. And there are some other unique things that kind of come to my mind from the question you're asking about pneumoconiosis is that some second and third decisions are made by the  commission finds that there was co-workers pneumoconiosis. And it's their call to make. Here they could choose Gerber and his peer reader Alexander or Selde. I can make the argument that Alexander is both a radiologist and peer reader and at least on paper he's the most qualified. But, if they had chosen the other way, I'd be a loser here. They had to choose one or the other and they chose that he had pneumoconiosis. Now, once the decision is made, it's rational, it's accepted, he has pneumoconiosis, we can go by Dr. Selde said, you cannot have pneumoconiosis without a functional impairment. Everywhere you see the white spot in the X-ray where there's a scar, there's an impairment in the function of your lungs. Also, he says, you can't go back. Also, he said, if you have it diagnosed at any time in your life you probably had it at that level when you left the mine. So, the decision on disease cured 1F, disablement, and who knows how many other decisions down the line. What about the issue of notice? When does an injured worker have to give notice that he's got CWP? He has to give it within the time frame for filing. I'm not talking about statute of limitations. I'm talking about within the practical period of time. What is the practical period of time? That is a decision for the commission to make and oddly enough when I quoted you a statute of limitations that's the amount of time he has now. So, let's say he files it on the day before the statute runs and the commission says, hey, that's too long. Well, then the commission says, why did it take so long? Well, if he'd gotten out of coal mining, had the exam found and had pneumoconiosis two months after he got out of the mine maybe that's a fact that would make the commission say it was not as soon as practical. We didn't have that here. And they look at each case individually. And how can a coal miner, now a coal miner knows he's got breathing problems he doesn't know why, he knows he smokes, he knows he's putting on weight he knows he's getting older, he doesn't want to admit any of this stuff. So, eventually he has the answer. Then he knows he's got pneumoconiosis and that's when his clock starts running as to when it's reasonable and then did it unduly precious. Because no matter how unreasonable no matter how defective his notice was all it does is shift the burden to the company to say that unduly prejudiced I couldn't defend myself. I'm still hung up on soon as practical. Can it be said that an injured miner is required to give notice of an impairment before the time that he knows that he has a disease that's caused by the mining? Well, that's what the company wants to say. I don't think that's the law, I don't think it should be the law I don't think that's the way the commission looks at it. Well, it occurs to me that it should be looked at in the same way that one looks at the discovery. Number one, you've got to know you've got the disease and number two, you have to know or reasonably should know that it's caused by your employment and then you're required to give the notice. Is there anything in the record that suggests that he knew or should have known that he suffered from this disease before Alexander took the x-ray? Again, duty is in the eye of the beholder. The commission has spoken. We're stuck with their decision. The answer is I think all coal miners and all coal companies know that a coal miner can get black lung. A miner knows near the end of his career he's getting short of breath but if he comes to our office and says I've got short of breath and all of his co-workers say I've got short of breath and his x-ray is clean and his PFDs are normal, he has no claim. So it's only after he couples his layman's knowledge yeah I'm getting short of breath, yeah I could have a problem yeah I'm not going to go back to coal mining I'm going to get my exam. Then he gets his exam, finds out he's got it now he's got a claim, he notifies within a month everything's met. So that's your response to Mr. Hansen. He's trying to equate shortness of breath with obviously the worker being aware of the disabled. You're saying shortness of breath in and of itself is not definitive. A lot of things can cause shortness of breath. We have guys come to us all the time who say I've worked in a coal mine 30 years or 40 years I've got this or that, they have the x-rays negative and we say I'm sorry, he says look further so we send him for a PFD, sorry it came back normal you don't have a case, so did he have shortness of breath I've got to assume he did, but it was not compensable I don't know how I would mount an argument that shortness of breath without a disease to tie it to his occupation. The reason why I'm asking the question is it occurs to me that it's a two tiered test. Number one, there has to be notice as soon as practical after the date of disablement. Number two, if there is no notice as soon as practical then the burden shifts to the employer to prove for actual prejudice assuming we're all within the statute of limitations but if the notice does fall within the period of practicality after knowledge, then it doesn't make any difference whether there's prejudice. It's given notice as soon as practical after the act of disablement. That's right, if the condition finds he did exist in his practicable there was no undue delay, there was no defective notice then it doesn't make any difference, we don't ask the second question. Well then it doesn't make any difference even if they prove there was prejudice. And even if they prove then it goes back and because the nature of a disease being different than an injury, it's hard to figure out how the legislature could have written it any better. This is not exactly the same but I should have gotten a colonoscopy when I was 50 I didn't, I waited until I was 55 and when I had it I had focal high grade dysplasia I was one step from having colon cancer, I had no idea. Had I not gone in then and I don't know why I waited 5 years if I had waited 6 years I might not be here today. This is similar to what the coal miner has everybody knows they can get colon cancer, they ought to get the colonoscopy all miners know they can get black lung everybody starts getting short of breath as they get older but you have to tie all those things together they have to be coupled with an occupational disease and that has to stand the test, the rigors of the commission analysis and they have to agree with you and in this case all those things occur. I feel like my argument is a little weak today because I'm following pumpkin patch injuries attempted tire iron beatings for money and sex and battery by a 7 foot psychopathic resident but unfortunately all this case comes down to is a series of simple manifest weight questions and when you look at them one at a time eat the elephant one bite at a time every decision the commission made was reasonable and they all add up to a wage differential and I ask that the court affirm the wage differential. Thank you counsel. Regarding Bruce's comments about he waited 5 years for the colon I suspect he didn't have the symptomology in this case petitioner testified I had symptomology, shortness of breath for 10 years that's what a reasonable person should look into that one would think the problem with the notice argument and the filing the application within a month or two of the x-ray is this so they know when they file the application we're going to blame this on co-workers pneumoconiosis we've got Dr. Alexander giving us a positive report but the application says this inhalation of coal dust including coal dust and so forth part of the body affected lungs and or heart nature of the injury, shortness of breath and exercise intolerance that's it there's nothing in there about co-workers pneumoconiosis and then he says why didn't you schedule an examination I point out to our brief again what I said earlier it's one thing when they have the records or the medical report from Dr. Alexander and they give Dr. Gerber ask them when did they send it to us we got it in 06, Gerber sees him in 04 and Dr. Alexander looks at an x-ray in 02 we get it in 06 and when we get it we immediately schedule the examination with Dr. Selby and obviously his testimonies report indicates he saw the gentleman in May of 2006 it's one thing when you when you can get up there and say well we had this and he had that they had it, we didn't have it the prejudice argument and also Bruce made the comment about signing up for the panel why did he stay on the panel because you have intentions of returning to work and not returning to work as he testified he stayed on the panel until 2006 he stayed on the panel 4 years after he filed his application for adjustment of claim he stayed on the panel because he thought there was a possibility that he could go back to work as a coal miner at some point in time it's not for any other reason but for that in this case and in the white case that we rely on prejudice also is an issue there even in a trauma case under the Work Compact not just the OD Act not only does the respondent have to show that there was no notice but they were prejudiced the white decision says no you don't have to do that if you don't give any notice in the first place that's the white case and that's the same thing here they didn't give us any notice this gentleman knew he had breathing problems if you believe his testimony for many many years they all know it could be related to co-workers pneumoconiosis I presume you have miners who have CWP do we know they have CWP in mine anyway? absolutely we have coal miners who file applications they get positive reports and they go back to work after that and they dismiss the case they don't get a wage differential because it's zero what they could earn versus what they are earning it's zero but the question becomes if they don't go back are they entitled to the wage differential vis-a-vis the CWP because they can't go back medically he had no opinion about that until Dr. Gerber he didn't have any opinion until 2004 that he should not go back to work if he had co-workers pneumoconiosis in this case the fact is he did not go back to work there only because the mine closed that's what he testified to but for the closure I would have continued working at it it's only an academic question if you do have it what do we do that issue was also decided in the Dawson case I really can't reconcile Dawson with this case if Dawson is the law then this case has to follow Dawson both Dr. Gerber and Selby agreed that a person diagnosed with CWP during his or her lifetime we have about the same level of diseases when they left the mine so how would your ability to immediately investigate the respondent's claim what did you lose by not being able to do that what would have changed if you had CWP an x-ray within two years keep in mind they said if that happens Dr. Selby's opinion is it didn't happen we're prejudiced that we can't get a timely x-ray or two x-rays one for each year during that two year period of time plus we don't know anything about this case this case just rolled the docket for four years until 06 the case was tried in 07 we didn't know anything about the case you're obviously prejudiced you don't know anything about it your client says what do we do we don't even need to schedule an IME with Dr. Selby until they provide some medical evidence in support of the case they have the burden of proving that they wait until the last minute and send it to us